IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KWAKU ATTA POKU, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-08-1198 |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK F.A., *et al.*, | * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Presently before this Court is Defendant Federal Deposit Insurance Corporation ("FDIC")'s Motion for Summary Judgment (ECF No. 51). Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the FDIC stands in the shoes of two named defendants in this case, Washington Mutual Bank F.A. ("WAMU Bank") and Washington Mutual Home Loans ("WAMU Home Loans"). Plaintiff Kwaku Atta Poku ("Plaintiff" or "Atta Poku") has filed an opposition, and the FDIC replied accordingly. This Court has reviewed the record, as well as the pleadings and exhibits, and conducted a hearing on January 20, 2011 pursuant to Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant FDIC's Motion for Summary Judgment (ECF No. 51) is DENIED.

### BACKGROUND AND PROCEDURAL HISTORY

Atta Poku is the former owner of the real property located at 11241 Powder Run, Columbia, Maryland (the "Property"). In October of 2000, Atta Poku took out a mortgage loan

1

and executed a Deed of Trust (the "2000 Loan") in order to purchase a home located at the Property. First Am. Compl. ¶¶ 3-4, ECF No. 9. Through assignments and mergers, Defendant WAMU Bank became the secured party under the 2000 Loan. *Id.* at ¶¶ 5-7. In May of 2001, Atta Poku took out another loan on the Property (the "2001 Loan"), this time with WAMU Home Loans, a separate entity from WAMU Bank. *Id.* at ¶¶ 10-14. Although the exact sequence of events remains unclear, WAMU Bank eventually became the successor to WAMU Home Loans.[1] Advance Settlement Agency, Inc. ("Advance Settlement") was the settlement entity involved in the 2001 Loan transaction. *See Poku v. Friedman, et al.*, 939 A.2d 185, 186 (Md. 2008).[2]

Atta Poku personally received no cash or other dispensation from the 2001 Loan—rather, it is undisputed that the purpose of the 2001 Loan was to pay off the 2000 Loan and reduce Atta Poku's interest rate. However, through no fault of Poku, the 2001 Loan proceeds were never paid to WAMU Bank and the 2000 Loan remained open and unpaid. *See Poku*, 939 A.2d at 186. It was proffered to the Court of Appeals of Maryland that the settlement entity, Advance Settlement, may have embezzled the money that was scheduled to pay off the 2000 Loan.[3] *Id.*

---

[1] In its Answer, WAMU Bank states "through a series of intercorporate transactions, WAMU Bank became the successor to WAMU Home by operation of law." WAMU Bank Answer ¶ 14, ECF No. 12; Pl.'s Opp'n Br. 1, ECF No. 52.

[2] As will be discussed *infra*, aspects of this case have been previously litigated in the Maryland State courts. Maryland's highest court, the Court of Appeals of Maryland has issued a written opinion that discusses the factual background of this case at length. It is appropriate for this Court to rely on that opinion as a matter of public record. *See generally Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); 5B Charles Allen Wright & Arthur Miller, *Federal Practice and Procedure*, § 1357 (3d ed. 2004).

[3] Similarly, at oral argument on January 20, 2011, it was reiterated that Advance Settlement, and in particular its former owner, Dwayne Pope, may have been primarily responsible for the failure

There are no allegations that Atta Poku directed, knew about, or in any way condoned any failure to pay off the 2000 Loan with the 2001 Loan proceeds. Indeed, at oral argument on January 20, 2011, representatives of the now dismissed defendant, Stewart Title Guaranty Co. ("Stewart Title"), acknowledged that Atta Poku was not at fault in any way in these proceedings.

Nevertheless, in 2004 WAMU Bank sought to collect on the 2000 Loan and notified Atta Poku of its unpaid status. *Id.* In February of 2005, approximately eight months later, WAMU Bank initiated a foreclosure action against the Property in the Circuit Court for Howard County, Maryland. First Am. Compl. ¶¶ 2, 76; *Poku*, 939 A.2d at 186. In March of 2005, the Property was sold to a third party at a foreclosure sale. *Poku*, 939 A.2d at 186.

In July of 2005, Atta Poku filed exceptions to the foreclosure sale in the Circuit Court for Howard County, Maryland. *Id.* at 187; *see also* FDIC Mot. Summ. J., ex. 4, ECF No. 51-7 Approximately one year later, a hearing was held on the exceptions, at which Atta Poku "was given a full opportunity to argue his exceptions and in fact did testify at that hearing." *Poku*, 939 A.2d at 187. On August 3, 2006, in a one-page order, the Circuit Court for Howard County overruled Atta Poku's exceptions and ratified the foreclosure sale. *Id.*; *see also* FDIC Mot. Summ. J., ex. 7, ECF No. 51-10.

Atta Poku appealed to the Maryland Court of Special Appeals, and at the same time requested a stay of the proceedings in both the circuit court and the Court of Special Appeals. The circuit court denied the request for a stay "except to the extent that a supersedeas bond was posted." *Id.* Atta Poku was unable to post a supersedeas bond, and the Court of Special Appeals

---

to pay off the 2000 Loan. Mr. Pope recently completed a 30 month prison sentence after pleading guilty to embezzling escrow settlement funds in Pennsylvania. *See United States v. Pope*, No. 05-cr-00172-CCC-1 (M. D. Pa. 2005).

dismissed his appeal as moot as a result of Plaintiff's failure to post such a bond. *Id.*

Atta Poku then filed a petition for certiorari with the Court of Appeals of Maryland to contest the Court of Special Appeals' dismissal. The petition was granted, but the Court of Appeals dismissed Atta Poku's appeal, again on the ground of mootness, as a result of his failure to previously post the requisite bond. *Id.* at 189.

On December 31, 2007, Atta Poku filed this action in the Circuit Court for Baltimore City, Maryland, against WAMU Bank, WAMU Home Loans, Stewart Title, Advance Settlement, and other foreclosure trustees. *See* Compl., ECF No. 3. On April 2, 2008, Atta Poku filed his First Amended Complaint (ECF No. 9) which again named as defendants WAMU Bank, WAMU Home Loans, Stewart Title, and Advance Settlement, dropped the foreclosure trustees, and added as defendants Dwayne Pope and John Does 1-10. At the hearing conducted on January 20, 2011, Defendant Stewart Title Guaranty Company's Motion to Dismiss was granted, and with the consent of the Plaintiff, the John Doe Defendants were also dismissed. *See*, Order, January 20, 2011, ECF No. 56.

Atta Poku's First Amended Complaint alleges four causes of action: gross negligence (Count I); intentional infliction of emotional distress (Count II); violation of Maryland's Consumer Protection Act ("MCPA") (Count III); and breach of fiduciary duty (Count IV). First Am. Compl. ¶¶ 33-84. Atta Poku is not specifically challenging the propriety of the ratified foreclosure action, but rather seeks redress for the mishandling of the 2001 Loan proceeds.

On May 8, 2008, the action was removed to this Court. WAMU Bank subsequently failed, and the FDIC was appointed receiver for the failed financial institution on September 25, 2008 pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989); 12 U.S.C. § 1821.  Because WAMU Bank previously became the successor to WAMU Home Loans, the FDIC also succeeds to "all rights, titles, powers and privileges of" that entity as well. *See id.* §§ 1821(d)(2)(A)(i).  On January 15, 2009, this Court entered an Order (ECF No. 33) substituting the FDIC as the Defendant for WAMU Bank and WAMU Home Loans in this action and furthermore stayed the action for a period of 90 days pursuant to Rule 35(c) of the Federal Rules of Civil Procedure, FIRREA, and the procedures set forth in 12 U.S.C. § 1821(d)(12).  On December 1, 2009, this Court entered an Order lifting the stay and allowing the action to proceed (ECF No. 40).  On April 9, 2010, the FDIC filed the pending Motion for Summary Judgment (ECF No. 51).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

The FDIC contends that Atta Poku's Complaint should be barred in its entirety on the basis of three interrelated doctrines: res judicata, collateral estoppel, and collateral attack. The FDIC argues that the present cause of action is based fundamentally on the foreclosure action conducted by the Circuit Court for Howard County, Maryland in 2006. Atta Poku argues that the principles of res judicata, collateral estoppel, and collateral attack do not control this action because this case concerns the 2001 Loan, and not the 2000 Loan that was at the center of the foreclosure action in the circuit court. In other words, Atta Poku does not question the propriety of the foreclosure action that resulted from the nonpayment of the 2000 Loan made by WAMU Bank, but brings this action with respect to the 2001 Loan transaction initiated by WAMU Home Loans.

For the reasons that follow, this Court concludes that the FDIC is not entitled to summary judgment, as the claims presented in this case are not precluded by principles of res judicata, collateral estoppel, or collateral attack. Each will be addressed in turn.

*Res judicata*

The doctrine of res judicata or claim preclusion provides that a final judgment on the merits in a prior suit bars a second suit based on the same cause of action that involves the same parties or their privies. *See Montana v. United States*, 440 U.S. 147, 153 (1979); *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997). The judge-made doctrine of res judicata serves "to promote judicial efficiency and foster reliance on adjudications by putting an end to a cause of action once litigated." *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991); *see also Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (res judicata is "judicial in origin"). Where, as here, the former adjudication is a state court judgment, a federal court applies the res judicata rules of the state that rendered the underlying judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1985); *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000); *see also* 28 U.S.C. § 1738. Under Maryland law, a subsequent claim is barred by the doctrine of res judicata when: (1) the parties in the present litigation are the same or in privity with the parties to the earlier suit; (2) the second suit presents the same cause of action or claim as the first, or the claim could have been raised in the prior suit but was not; and (3) the prior adjudication was a final judgment on the merits by a court of competent jurisdiction. *See R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008); *deLeon v. Slear*, 616 A.2d 380, 385 (Md. 1992).

As a preliminary matter, is should be noted that in evaluating whether or not the principles of res judicata bar this action, this Court is primarily concerned with the foreclosure action conducted by the Circuit Court for Howard County, Maryland in 2006, and not the various appeals to the Mayland Court of Special Appeals and the Court of Appeals of Maryland. Despite

the fact that Atta Poku sought review of the foreclosure action up to Maryland's highest court, that court dismissed his action as moot after he failed to post a supersedeas bond. Similarly, the intermediate court, the Maryland Court of Special Appeals also dismissed Atta Poku's appeal based on mootness. A dismissal based on mootness is not an adjudication on the merits, and therefore does not lay a foundation for the application of the doctrine of res judicata. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4436 at 166-68 (2d ed. 2002). "[T]he holding of mootness is not a judgment on the merits and, as a nonmerits judgment, it does not bar further action on any matters not actually adjudged." *De Volld v. Bailar*, 568 F.2d 1162, 1165-66 (5th Cir. 1978); *see also N. Sims Organ & Co. v. SEC*, 293 F.2d 78, 81-82 (2d Cir. 1961), *cert. denied*, 368 U.S. 968 (1962). As a result, because both state court appeals in this case were dismissed as moot, those actions do not serve as a basis for a finding of preclusion by res judicata. It is the foreclosure action conducted by the Circuit Court for Howard County that this Court must evaluate for its preclusive effect.

With regard to the first element of the res judicata analysis, the parties in the present case are undoubtedly the same or are in privity with the parties to the foreclosure action. Atta Poku was a party to the foreclosure action. *See Poku v. Friedman, et al.*, 939 A.2d 185 (Md. 2008). "Privity in the res judicata sense generally involves a person so identified in interest with another that he represents the same legal right." *Anyanwutaku v. Fleet Mortgage Group*, 85 F. Supp. 2d 566, 571 (D. Md. 2000) (quoting *FWB Bank v. Richman*, 731 A.2d 916, 930 (Md. 1999)). The foreclosure trustees, who were the named parties in the foreclosure action, were appointed by, and acted as agents of WAMU Bank for the purpose of prosecuting the foreclosure action, and are therefore in privity with WAMU Bank. *See* First Am. Compl. ¶¶ 1-2. The FDIC, as receiver

8

for the failed WAMU Bank, succeeds to all rights, powers, titles, and privileges of the institution and is therefore in privity with WAMU Bank. *See* 12 U.S.C. § 1821(d)(2).

Second, this Court must determine whether this case presents the same cause of action as the foreclosure action conducted by the Circuit Court of Howard County. In that vein, the doctrine of res judicata applies to bar not only issues that were explicitly raised in the preceding action, but also issues that could have been raised in that earlier action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). It is on this ground that the FDIC argues that res judicata bars Atta Poku's claims—in its Motion for Summary Judgment, and again at oral argument, the FDIC was clear that its res judicata argument relies solely on the fact that Atta Poku *could have* raised his current claims at the foreclosure action in 2005 and 2006.

To determine the identity of the causes of action, federal and Maryland courts have adopted the "transaction test." *See Anyanwutaku*, 85 F. Supp. 2d at 571 (citation omitted). Under this test, claims are identical for preclusion purposes if they arise out of the same transaction or series of transactions. *See id.*; *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). Whether claims are products of the same "transaction" is determined by considering such factors as "whether the facts are related in time, space, origin, or motivation, whether they forma convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Anyanwutaku*, 85 F. Supp. 2d at 571 (quoting Restatement (Second) of Judgments § 24(2) (1982).

Therefore, this Court must examine the underlying transactions giving rise to the foreclosure action and the present lawsuit. There are at least three discrete "transactions" at play in this case: (1) the transaction between Atta Poku and WAMU Bank's predecessors regarding

9

the original 2000 Loan that Atta Poku used to purchase his home in Columbia Maryland; (2) the foreclosure action itself, which ultimately resulted in a finding that the 2000 Loan was never paid off; and (3) the transaction between Atta Poku and a separate entity, WAMU Home Loans, regarding the 2001 Loan that was purportedly made in order to refinance the 2000 Loan. The FDIC argues that the facts underlying all three transactions are bound up together, and even if Atta Poku did not raise his current claims at the foreclosure action, he could have, and should have done so. Alternatively, Atta Poku argues that the 2000 Loan and the 2001 Loan are fundamentally different transactions, involving different lenders, and different loan terms. Moreover, Atta Poku argues that to the extent that the Circuit Court for Howard County decided anything regarding the 2001 Loan, it only decided that the 2001 Loan was never used to pay off the 2000 Loan. This Court finds Atta Poku's argument persuasive. His First Amended Complaint does not assert any claims relating to the conduct and propriety of the foreclosure proceeding and the 2000 Loan, but rather seeks redress for defendant WAMU Home Loan's alleged failure to pay out the loan proceeds of the 2001 Loan. This Court does not find that the two loan transactions were so tied up with one another that Atta Poku is precluded from raising claims regarding the 2001 Loan on the basis that he could have raised those claims in the foreclosure action.

The FDIC places a great deal of emphasis on a case decided by the Court of Appeals of Maryland, *Fairfax Savings, F.S.B. v. Kris Jen Limited Partnership*, 655 A.2d 1265 (1995), for the proposition that Atta Poku's claims are now barred under res judicata. In that case, the Court of Appeals held that the plaintiffs could have asserted their no-default claim and other claims as a counterclaim in the mortgage foreclosure action, and as a result, barred the plaintiff's claims

under res judicata principles. *Id.* at 1275. However, Atta Poku aptly points out that in *Fairfax*, there was only one mortgage loan in question—the complaint filed by the borrowers after the foreclosure action related only to the loan that was foreclosed on. The plaintiffs in *Fairfax* essentially argued that there was no foreclosure triggering default on which to base the foreclosure action. *Id.* at 1267. The Court of Appeals found that "[a]llegations that there was no foreclosure-triggering default negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment." *Id.* at 1280. Because the borrower's claims were predicated on a contention that there had not been a foreclosure-triggering default, the existence of such a default was a necessary prerequisite to the circuit court's foreclosure judgment. *Id.* at 1271.

In the present case, however, Atta Poku's First Amended Complaint raises no allegations as to the propriety of the foreclosure action, and instead only challenges the 2001 Loan proceedings. As a result, Atta Poku's claims are not predicated on a contention that there was no foreclosure-triggering default, and if victorious, would not negate, contradict, or nullify the foreclosure judgment. In short, this Court finds that the 2000 Loan and 2001 Loan are separate "transactions" for the purposes of the claim identity prong of the res judicata analysis. While it is theoretically possible that Atta Poku could have raised his claims in the foreclosure proceeding via a counterclaim,[4] the two loans at issue and the arguments and defenses are not sufficiently

---

[4] Raising these allegations via a counterclaim at the foreclosure proceeding would not only be difficult for Atta Poku, but in all likelihood would have been onerous for the circuit court as well. As the Court of Appeals of Maryland stated in *Fairfax Savings*:

> Although there is no theoretical obstacle to docketing a counterclaim by the mortgagor in a mortgage foreclosure proceeding, there are innumerable practical difficulties. . . . If the counterclaim is filed before sale, the court may be required to exercise its discretion as to which aspect of the single action on the docket is to proceed first. . . . If exceptions to the ratification of the sale are filed, a circuit

related to form a convenient trial unit. *See Anyanwutaku v. Fleet Mortgage Group*, 85 F. Supp. 2d 566, 571 (D. Md. 2000) (quoting Restatement (Second) of Judgments § 24(2) (1982)).

Finally, because this Court concludes that the present lawsuit does not present the same causes of action raised in the foreclosure proceedings, it need not examine the third prong of the res judicata analysis, that is, whether the foreclosure proceedings constitute a final judgment on the merits. *See R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008). However, it should be noted that because Atta Poku's appeals to the Court of Special Appeals of Maryland and the Court of Appeals of Maryland were ultimately dismissed as moot, it is far from clear, contrary to the suggestion of the FDIC, that there has been a final judgment on the merits for res judicata purposes. *See Murray Int'l Freight Corp. v. Graham*, 555 A.2d 502, 506 n.5 (Md. 1989) ("Where a party to a judgment cannot obtain the decision of an appellate court because the matter determined against him is immaterial or moot, the judgment is not conclusive against him in a subsequent action on a different cause of action.") (quoting Restatement of Judgments § 69(2) (1942)); *see also* Restatement (Second) of Judgments § 28(1) (1982) (relitigation of an issue not precluded if party could not, as a matter of law, have obtained review).

*Collateral Estoppel*

In addition to arguing that Atta Poku's claims are barred under res judicata, the FDIC also argues that his claims are barred under the related doctrine of collateral estoppel. The doctrine of collateral estoppel, or issue preclusion, seeks to prevent the relitigation of issues

---

court may also have to consider issues of severance under Md. Rule 2-503(b) as well as issues relating to the preservation of the right to a jury trial.

*Fairfax Savings, F.S.B. v. Kris Jen Limited Partnership*, 655 A.2d 1265, 1275 n.9 (1995).

previously decided in an earlier action. The United States Court of Appeals for the Fourth Circuit has explained the rationale behind the collateral estoppel doctrine:

> The collateral estoppel doctrine seeks to further the judicial interest in economical resolution of disputes, although never to the point where a litigant is denied his full and fair opportunity to present his case to a competent fact finder. . . . The collateral estoppel doctrine is a judge-made rule, capable of flexible interpretation to serve the interests of judicial economy by preventing needless relitigation. This flexibility is constantly limited by the overriding principle that the courts should protect a litigant's right to a full and fair opportunity to litigate his claims.

*Ritter v. Mount St. Mary's College*, 814 F.2d 986, 994 (4th Cir. 1987).

This Court must apply Maryland law when determining the preclusive effect of a Maryland state court judgment. *O'Reilly v. County Bd. of Appeals*, 900 F.2d 789, 791 (4th Cir. 1990). In the context of the present case, the doctrine of collateral estoppel at issue is known as defensive, non-mutual collateral estoppel, which applies where "the defendant seeks to preclude the plaintiff from relitigating an issue that the plaintiff previously litigated unsuccessfully against other defendants." *The Standard Fire Ins. Co. v. Berrett*, 910 A.2d 1072, 1083 (Md. 2006). Maryland's four-part test for determining whether the doctrine of defensive, non-mutual collateral estoppel is: (1) whether the issue decided in the prior adjudication is identical to the one presented in this action; (2) whether there was a final judgment on the merits; (3) whether the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom the plea is asserted was given a fair opportunity to be heard on the issue. *Id.* at 1084.

The FDIC's invocation of defensive non-mutual collateral estoppel fails on the "identity of issues" and "fair opportunity to be heard" requirements. As discussed in the preceding section, Atta Poku's claims in this case center on the 2001 Loan and the failure to distribute its

proceeds, and not the 2000 Loan that was at the center of the foreclosure action. Atta Poku's claims relate to the alleged mishandling of the 2001 Loan and in no way challenge the propriety of the foreclosure action. The only definitive issue relating to the 2001 Loan that was decided in the foreclosure proceeding was that the 2001 Loan was *not* applied to the 2000 Loan. Accordingly, the issues brought by Atta Poku relating to the 2001 Loan were neither before the circuit court nor decided in the foreclosure action.

Furthermore, Atta Poku has clearly not been given a full and fair opportunity to be heard on the issues he raises in this case. He has been diligent in appealing the foreclosure proceeding decided against him, yet he has received no substantive review of that decision as a result of his appeals being dismissed as moot because of a procedural failure. The propriety of the foreclosure proceeding is not before this Court, and Atta Poku's claims are sufficiently differentiated from that action so as to foreclose preclusion of his case on collateral estoppel grounds. This Court is mindful of the overriding principle of the collateral estoppel doctrine, that the courts should protect a litigant's right to a full and fair opportunity to litigate his claims. *See Ritter*, 814 F.2d at 994. Collateral estoppel, therefore, cannot bar the claims that Atta Poku now brings.

*Collateral Attack*

Finally, the FDIC argues that Atta Poku's claims constitute an impermissible collateral attack on the outcome of the foreclosure proceeding. While it is true that in Maryland, a direct challenge to the validity of a foreclosure proceeding constitutes a collateral attack, *see Klein v. Whitehead*, 389 A.2d 374, 385 (Md. Ct. Spec. App. 1978), Atta Poku, in the present action is not challenging the validity of the foreclosure action. As previously stated, his claims relate to the

14

2001 Loan which is only tangentially related to the 2000 Loan.  Any finding that WAMU Bank is liable for improperly handling the 2001 Loan proceeds will have no effect on the foreclosure action ratifying the foreclosure on the 2000 Loan.  As a result, this Court does not find that Atta Poku's claims constitute a collateral attack on the foreclosure action and can therefore proceed.

## CONCLUSION

For the reasons stated above, Defendant FDIC's Motion for Summary Judgment (ECF No. 51) is DENIED.

A separate Order follows.

Dated:       January 31, 2011                    /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge