IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KWAKU ATTA POKU, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-08-1198 |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK F.A., *et al.*, | * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Presently before this Court is Defendant Federal Deposit Insurance Corporation ("FDIC")'s Motion to Strike or, in the Alternative, for Partial Judgment on the Pleadings. (ECF No. 63). Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the FDIC stands in the shoes of two named defendants in this case, Washington Mutual Bank F.A. ("WAMU Bank") and Washington Mutual Home Loans ("WAMU Home Loans"). Plaintiff Kwaku Atta Poku ("Plaintiff" or "Atta Poku") has filed an opposition (ECF No. 66), and the FDIC replied accordingly (ECF No. 67). Specifically, the FDIC asks this Court to deny Atta Poku's demands for punitive damages and attorneys' fees. This Court has reviewed the record, as well as the pleadings and exhibits, and it conducted a hearing on April 21, 2011 pursuant to Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant FDIC's motion is granted with respect to punitive damages, and denied with regard to attorneys' fees.

## BACKGROUND

The background facts of this action were fully set forth in this Court's Memorandum

1

Opinion of January 31, 2011. *Poku v. FDIC, et al.*, No. RDB-08-1198, 2011 WL 334680 (D. Md. Jan. 31, 2011). To summarize, in October of 2000, Atta Poku took out a mortgage loan to purchase a home located at 11241 Powder Run in Columbia, Maryland (the "2000 Loan"). Defendant Washington Mutual Bank ("WAMU Bank") became the secured party under that loan. In May of 2001, Atta Poku took out a second loan on the property through WAMU Home Loans (the "2001 Loan"). WAMU Bank eventually became the successor to WAMU Home Loans. The purpose of the second loan was to pay off the initial loan and reduce Atta Poku's interest rate. Through no fault of Atta Poku, the 2001 Loan proceeds were never paid to WAMU Bank, and the 2000 Loan remained open and unpaid. The money may have been embezzled by a settlement company. Nevertheless, WAMU Bank sought to collect on the 2000 Loan, and in March of 2005, the property was sold to a third party at a foreclosure sale. Atta Poku fought the foreclosure of his property in Maryland state court but was unsuccessful.

In December of 2007, Atta Poku filed the current action, which seeks damages against WAMU Bank for gross negligence (Count I), intentional infliction of emotional distress (Count II), violation of the Maryland Consumer Protection Act (Count III), and breach of fiduciary duty (Count IV). Atta Poku is not challenging the propriety of the ratified foreclosure action, but rather he seeks redress for the mishandling of the 2001 Loan proceeds. Atta Poku is seeking compensatory damages and punitive damages of up to $34 million and attorneys' fees.

The FDIC was appointed the Receiver of WAMU Bank in September of 2008 after the bank failed. The FDIC earlier filed a motion for summary judgment in this action based on res judicata, collateral estoppel, and collateral attack. (ECF No. 51). This Court denied that motion, finding that Atta Poku's current action was not sufficiently related to his earlier lawsuit regarding

2

the foreclosure. *Poku v. FDIC*, No. 08-1198, 2011 WL 334680 at *3 (D. Md. Jan. 31 2011). Specifically, Atta Poku's current claims relate to the mishandling of the 2001 Loan proceeds and do not challenge the propriety of the foreclosure action. *Id.* at *6-8.

The FDIC now submits a motion to strike the punitive damages and attorneys' fees requested in Counts I-IV. Alternatively, the FDIC requests partial summary judgment on the pleadings as to these damage claims.

## STANDARD OF REVIEW

The FDIC asks this court to disallow Atta Poku's demands for punitive damages and attorney's fees under Federal Rules of Civil Procedure 12(f), which enables a court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Alternatively, the FDIC asks that this Court to rule on the pleadings and dismiss the claims for punitive damages and attorneys' fees under Rule 12(c). At the hearing held on April 21, 2011, both parties agreed that the proper framework for deciding the issue of punitive damages and attorneys' fees was under Rule 12(c).

As the parties have agreed, the standard of review for a Rule 12(c) motion is identical to a Rule 12(b)(6) motion. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also*

3

*Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 758 2011 WL 184356, at *10 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 555 (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial

experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

I. Punitive Damages

The FDIC argues that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) limits the type of recovery available to Atta Poku. Mem. in Supp. of FDIC's Mot. to Strike 4. Specifically, the FDIC contends that FIRREA prohibits certain forms of relief from being awarded against FDIC-Receiver, including punitive damages, statutory penalties, injunctive and declaratory relief, and attorneys' fees. *Id.* at 4-5. To illustrate this limitation, the FDIC relies on the language of 12 U.S.C. § 1825(b)(3), which states that, as Receiver, "[t]he Corporation shall not be liable for any amounts in the nature of penalties or fines . . . ." 12 U.S.C. § 1825(b)(3).

Conversely, Atta Poku claims that Section 1825(b)(3) does *not* preclude punitive damages. Opp'n 3. He argues that that the absence of the words "punitive damages" in Section 1825(b)(3) is significant, because Congress explicitly used those words when it disallowed punitive damages in another section. *See* 12 U.S.C. § 1821(e)(3) (relating to repudiated contracts, where punitive damages are expressly prohibited). Arguing that "Congress knew how to craft language eliminating punitive damages when it wanted to prohibit them," Atta Poku contends that broadening the term "fines and penalties" to include punitive damages "is a strained effort that lacks merit." *Id.* at 3-4.

In addition, Atta Poku argues that there is no limitation on punitive damages as part of the valid claim that the FDIC is obligated to pay as the Receiver for a failed bank. Opp'n 3.

5

Specifically, he relies on the language of 12 U.S.C. § 1821(d)(2)(H), which imposes a duty on the FDIC to pay all valid claims against a failed institution: "The Corporation, as conservator or receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this Act." 12 U.S.C. § 1821(d)(2)(H).

Although few courts have ruled directly on this issue, the United States District Court for the Eastern District of New York reviewed a case comparable to Atta Poku's action in *Cassese v. Wash. Mut., Inc.,* 711 F.Supp.2d 261, (E.D. N.Y. 2010). There, the plaintiffs claimed that Washington Mutual Bank charged improper fees when early mortgage payments were made. *Id.* at 264. The plaintiffs brought suit under state consumer protection statutes as well as common law breach of contract, unjust enrichment and fraud. *Id.* The court in *Cassese* disallowed punitive damages against the FDIC as Receiver for Washington Mutual Bank. Specifically the court found that, by the plain language of Section 1825(b), the FDIC was not liable for punitive damages assessed after the commencement of receivership. *Id.* at 273. The *Cassese* court also emphasized that punitive damages, which are designed to deter future infractions, make little sense when the primary target of the deterrence is no longer in existence. *Id.* Finally, the court underscored the public policy concerns that "any punitive damage award asserted against a failed institution would come out of the pockets of other creditors who had no part in the wrongful conduct being punished." *Id.*

The reasoning of the Eastern District of New York is persuasive in Atta Poku's case. As punitive damages represent penalties, the plain language of Section 1825(b) precludes the imposition of punitive damages on the FDIC as Receiver. In addition, even if Atta Poku succeeds in his claims against the FDIC, a punitive damage award will achieve little in the way

6

of deterring the failed WAMU Bank from violating its obligations to its customers. Finally, a large punitive damage award might substantially diminish the assets available to distribute among creditors of the bank. For these reasons, this Court grants the FDIC's motion for judgment on the pleadings with respect to punitive damages.

II. Attorneys' Fees

The FDIC proposes several arguments as to why Atta Poku may not recover attorneys' fees.[1] Primarily, the FDIC submits that attorneys' fees are barred under 12 U.S.C. § 1825(b)(3) because they are punitive in nature. Defs.' Mem. 8. It cites extensive case authority where federal courts reviewing actions under federal law have designated attorneys' fees as punitive. Reply in Further Supp. of FDIC's Mot. to Strike 6. The FDIC also argues that at the time of the failure, Atta Poku had not established a right to attorneys' fees and that allowing for attorneys' fees would further hinder claimants against the bank in their right to recover actual damages. *Id.* at 6-7.

Atta Poku argues that the claim for attorneys' fees sought under this action is based on the Maryland Consumer Protection Act ("MCPA"). Reply 8-9. He contends that, when examining the nature of attorneys' fees that are permitted by state statute, the Second, Third, and Eleventh Circuits have relied upon a respective state's determination of whether attorneys' fees are punitive or compensatory. *See Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 87 (2d Cir. 2009); *Willow Inn, Inc. v. Pub. Svc. Mut. Ins. Co*. (399 F.3d 224, 234-37 (3d Cir. 2005); Action Marine, Inc. v. Cont'l Carbon, Inc., 481 F.3d 1302 (11th Cir. 2007).

---

[1] During the hearing on April 21, 2011, the FDIC also proffered an argument, based on two cases from the Northern District of California, that the Home Owners' Loan Act (HOLA), 12 U.S.C. § 1462 *et seq.*, preempts Atta Poku's Maryland Consumer Protection Act claim. As this matter has not been fully briefed, this Court need not rule on that question at this time.

In Maryland, a private cause of action is allowed for a violation of the MCPA under Md. Code Ann., Com. Law § 13-408. Part (a) of that section of the code reads:

> (a) . . . any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

In addition, the statute specifically permits plaintiffs who prevail under part (a) to recover attorneys' fees under part (b):

> (b) Attorney's fees. -- Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

The Court of Appeals of Maryland has clarified that the remedies found under Section 13-408 are compensatory and not punitive. *Hoffman v. Stamper*, 385 Md. 1, 48-49, 867 A.2d 276, 304-305 (Md. 2005) (citing *Golt v. Phillips*, 308 Md. 1, 12, 517 A.2d 328, 333 (1986). Presumably, attorneys' fees for those compensatory remedies were also designed to assist a plaintiff in recovering losses and not to serve as a punitive measure.

Regardless, this Court need not address whether or not attorneys' fees under the MCPA are compensatory. Maryland courts have found that the recovery of attorneys' fees is a collateral issue that may be considered after judgment on a claim. *Mercedes-Benz of N. Am. Inc. v. Garten*, 94 Md.App. 548, 568, 618 A.2d 233 (1993); *Prince George's County v. Doe*, 300 Md. 445, 451 n.4, 479 A2d 352 (1984). If and when Atta Poku secures a verdict under the MCPA at trial, this Court may address the demand for attorneys' fees at that time. For this reason, this Court will deny the FDIC's motion for judgment on the pleadings with respect to attorneys' fees.

## CONCLUSION

For the reasons stated above, Defendant FDIC's Motion for Partial Judgment on the Pleadings (ECF No. 63) is GRANTED in part and DENIED in part.

A separate Order follows.

Dated: April 27, 2011

/s/_____
Richard D. Bennett
United States District Judge